HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTIAN JAY TARSIA,

        Plaintiff,

v.

JOINT BASE LEWIS McCHORD
PROVOST MARSHAL OFFICE, et al.,

        Defendant.

CASE NO. C15-05739-RBL

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

THIS MATTER is before the Court on Defendant Charles Sikes' Motion for Summary Judgment. Dkt. #37. Plaintiff Christian Jay Tarsia filed this case alleging that his DNA was collected unconstitutionally after he was arrested for bringing a firearm onto Joint Base Lewis McChord (JBLM). However, Defendant Sikes contends that he was not involved in the decision to take a sample of Tarsia's DNA, did not supervise anyone who took Tarsia's DNA, and was not present during the collection process itself. Sikes therefore requests that the Court dismiss him from this case.

## BACKGROUND

On December 2, 2013, Tarsia drove onto JBLM from the DuPont Gate to drop his wife off at work. His car was selected for a random search, which was conducted by Sikes and another officer. During the search, Sikes found a 9mm pistol in a pocket behind the passenger seat and learned that it had a round in the chamber.

Tarsia claims that, after putting his military working dog back in his vehicle, Sikes made some exclamations about having "gotten" Tarsia for having a concealed weapon and celebrating that this constituted a felony. Both parties agree that, after a few minutes, Specialist Christopher Koch showed up on the scene. In their sworn statements, Sikes and Koch both state that they contacted the desk sergeant, who told them to apprehend Tarsia for unlawful possession of a firearm. Koch's statement adds that the desk sergeant specified that Tarsia would be charged with violating 18 U.S.C. § 930.

After Koch arrived, Tarsia states that Sikes and Koch made him and his wife go into the "guard shack" while Sikes and Koch filled out paperwork. Koch then handcuffed Tarsia and told him to go to his car. Tarsia claims that while he was waiting in the car, Sikes was interrogating his wife as to whether the gun belonged to Tarsia.

Koch then drove Tarsia to the Provost Marshal Office. According to Tarsia, after some time, a woman entered the room with a DNA kit and told Tarsia that she was going to collect his DNA. Tarsia stated that he did not consent, but Koch told him that it was standard practice. Koch also produced a form stating, "It is mandatory that US Persons who are arrested . . . cooperate in the collection of a sample of his or her DNA. Failure to do so may result in samples taken by the minimum force necessary and (additional legal punishment)." Tarsia did not consent but allowed

the sample to be taken. Finally, Tarsia states that Sikes returned after a considerable time to fill out his discharge papers and make some veiled threat about "beating his ass."

## DISCUSSION

**1. Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on

allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). A mere "scintilla of evidence" is also not enough; the nonmoving party must present "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**2.     Analysis**

In *Maryland v. King*, the Supreme Court held that collecting DNA from someone suspected of a serious crime as part of a routine booking procedure does not violate the Constitution. 569 U.S. 435, 465 (2013). Nonetheless, a plaintiff may state a Fourth Amendment claim where their DNA was collected not pursuant to statutory procedure or a court order. *See Brown v. Conrado*, No. CV 13-2620-PSG PJW, 2014 WL 772803, at *3 (C.D. Cal. Feb. 21, 2014) (declining to dismiss a claim where the officer lied to the plaintiff about having a court order). A government officer can only be liable for their "integral participation" in unlawful conduct; being part of a "team effort" is not enough. *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996).

Here, the undisputed facts show that no reasonable jury could find Sikes liable for any constitutional deprivation Tarsia may have suffered. Sikes' declaration and the sworn statements from the day of the incident all indicate that Sikes released Tarsia to Koch's custody, after which he was transported to another location and his DNA was collected. Dkt. #38; Dkt. #41, at 14, 16. Tarsia's own account of the incident does not contradict this. Dkt. #43.

|    |                                                                                                                          |
|----|--------------------------------------------------------------------------------------------------------------------------|
| 1  | Instead, Tarsia points to a variety of claimed inaccuracies in Sikes' account. However, |
| 2  | even if Tarsia's account were accurate, Sikes would not be an integral participant in the |
| 3  | constitutional deprivation that Tarsia complained of. For example, Tarsia claims that Sikes |
| 4  | misled Koch into believing that Tarsia was arrested for a felony, which led to the DNA |
| 5  | collection. However, the statement of probable cause written by Sikes only states the type of |
| 6  | charge and does not indicate whether it is a felony. Dkt. #41, at 2. In addition, while Tarsia |
| 7  | claims in his brief that Sikes informed Koch that 18 U.S.C. 930 was a felony, this is not |
| 8  | supported by Tarsia's own sworn statement of the facts, which merely states that Sikes yelled |
| 9  | something about arresting Tarsia for a felony well before Koch even arrived. *See* Dkt. #43, at 3. |
| 10 | In short, Tarsia has not presented evidence that Sikes was in any way involved with the |
| 11 | decision to take Tarsia's DNA or supervised anyone who was. Sikes must therefore be dismissed |
| 12 | from the case. |

## CONCLUSION

For the above reasons, Defendant Sikes' Motion for Summary Judgment [Dkt. #37] is GRANTED.

IT IS SO ORDERED.

Dated this 23rd day of January, 2019.

Ronald B. Leighton
United States District Judge